# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY EDWARD OLIVER, | : | CIVIL ACTION NO. 3:16-cv-0407 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| JOHN WETZEL, *et al.*, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Anthony Edward Oliver ("Oliver" or "Plaintiff"), at all times relevant a state inmate incarcerated at the State Correctional Institution at Huntingdon, Pennsylvania ("SCI-Huntingdon"), commenced this civil rights action pursuant to 42 U.S.C. § 1983 on March 8, 2016. (Doc. 1). The matter is proceeding *via* an Amended Complaint filed on May 10, 2016. (Doc. 27).

Presently pending are two separate Motions (Docs. 50, 51) to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The first motion (Doc. 50) is filed on behalf of defendants Christopher Cook ("Cook"), James Eckard ("Eckard"), Amy Himes ("Himes"), Craig Kyle ("Kyle"), Lonnie Oliver ("L. Oliver"), John Smart ("Smart"), Jason Stevens ("Stevens"), Eric Tice ("Tice"), Shane Treweek ("Treweek"), John Wetzel ("Wetzel") and Grant Yohn ("Yohn"), collectively referred to as the Commonwealth Defendants. The second motion (Doc. 51) is filed on behalf of Dr. Kevin Kollman ("Kollman"), Mark McConnell, PA-C ("McConnell"), and

Michael Gomes, PA-C, identified as the Medical Defendants. For the reasons that follow, the motions will be granted in part and denied in part.

## I.  Standard of Review

Rule 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal,

2

556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## II. Allegations of the Amended Complaint

Oliver alleges that he began suffering from migraine headaches in his teenage years and developed a seizure disorder in his mid-twenties. (Doc. 27, ¶ 39). He is on SCI-Huntingdon's medical department's chronic care list because of his migraines and seizures and is permanently classified for "bottom-tier/bottom bunk" status. (Id. at 60). His complaint includes four separate time periods during which he alleges that he was assigned a cellmate who smoked tobacco products and that this involuntary exposure to environmental tobacco smoke ("ETS") induced migraine headaches and seizures.

He alleges that he first challenged the no smoking policy beginning in February 2013. (Id. at 102). Throughout 2013, he experienced a number of incidents and

3

occurrences, and continued to seek enforcement of the no smoking policy. (Id. at 91-120).

The allegations then leap forward to March 2015. On March 20, 2015, Oliver notified Defendant Treweek that he suffered a seizure "as a result of prolonged exposure to ETS as a result of his cell mate's continuous cigarette smoking." (Id. at 74, 75). Defendant Treweek directed him to work it out with his cellmate. (Id. at 75). He alleges that he suffered another seizure the following day and, in response, Treweek moved him out of his cell and to the second tier top bunk with another known smoker. (Id. at 76, 77). He allegedly had a third seizure on March 22, 2015, "as a result of ETS exposure due to his cell-mate's smoking." (Id. at 78).

On March 23, 2015, he inquired as to whether Defendant Gomes forwarded the "bottom-tier/bottom bunk" medical order. (Id.) He was informed that the bottom bunk order was in place but not the bottom tier order. (Id. at 79). Oliver alleges that he requested protective custody because the RHU is the only area in the facility that tobacco use is prohibited and the no smoking policy is enforced. (Id. at 80). Oliver explained the involuntary exposure to ETS and the repeated moves into cells with smokers to a Captain and Lieutenant and again requested protective custody. (Id. at 81-83). He was escorted to the RHU and subsequently received a misconduct report for refusing an order. (Id. at 84, 85). Defendant Himes held a hearing and found Oliver guilty of the charged misconduct on March 27, 2015. (Id. at 86-89). The PRC upheld the finding of guilt.

4

The next occurrence took place on December 15, 2015, when Defendant Stevens assigned him a "smoking tobacco user" as a cellmate. (Id. at 37). He avers that "[b]ecause cigarette smoke exacerbates his headaches and migraine pain, frequently triggers his seizures, [he] reported this as directed by medical staff." (Id. at 38). He accepted the cellmate because refusing to accept a cellmate results in issuance of a misconduct. (Id. at 41). He alleges that he sought a medical pass after experiencing an "aura" and lightheadedness due to "ETS exposure" caused by his cellmate's constant smoking. (Id. at 42-45). Upon returning from his medical visit, he requested that Defendant Yohn transfer him to "protective custody" because " 'continuous exposure to' high levels of ETS would to [sic] trigger seizures and that his cell-mate was a smoking tobacco user and said he would not stop smoking in the cell." (Id. at 46). Oliver alleges that fifteen minutes later Yohn ordered him to Central Control and he was escorted to the Restricted Housing Unit ("RHU"). (Id. at 47). Defendant Stevens issued him a misconduct report for refusing to obey an order based on his refusal to accept a cellmate. (Id. at 47).

Defendant Himes found him guilty of misconduct following a hearing. (Id. at 50). The Program Review Committee ("PRC") upheld the finding of guilt on appeal. (Id. at 51). The Facility Manager, Defendant Tice, and the Secretary's Office of Inmate Grievance Appeals, also upheld the finding of guilt on appeal. (Id. at 54, 55, 57, 58). He alleges that upon his release from the RHU, Defendant Stevens advised him that Defendant Yohn ordered him to fabricate the misconduct report. (Id. at 56).

5

Upon release from the RHU, Stevens assigned him to a cell on the second tier. (Id. at 61). After advising Defendants Stevens and Smart of his medical classification, Smart contacted the medical department and, although his bottom bunk status was confirmed, it was not clear that he was also classified bottom tier; he was advised to sign up for sick call for purposes of clarifying his tier classification. (Id. at 64-66).

Oliver was seen by Defendant McConnell and, in response to his complaints about ETS exposure and cell assignments, McConnell stated "this is a non-smoking facility" and he "should discuss housing issues with unit management staff." (Id. at 68). When Oliver requested the treatment policy for ETS exposure, McConnell reiterated "this is a non-smoking facility and there is no policy for treating [ETS] exposure." (Id. at 69). Defendant McConnell renewed his bottom tier/bottom bunk status. (Id.) Oliver alleges that in the week it took for the approval of the new medical orders, he suffered four seizures due to ETS smoke. (Id. at 70). He reported the seizures and the continued use of tobacco by both prisoners and staff, as well as the fabricated misconduct report issued by Stevens, to Defendant L. Oliver and Raymond Moore. (Id. at 71, 72). Both replied "this is a non-smoking facility" but that they would look into it. (Id. at 73).

In Count I of his complaint, Oliver alleges that the Commonwealth Defendants exhibited deliberate indifference to his health and safety by "willfully exposing him to unreasonably high levels of ETS…," disregarding his bottom tier/bottom bunk clearance, and ignoring his requests to be transferred to an area of the prison with less ETS or to a non-smoking facility. (Id. at 121-27). In Count two, Oliver alleges that the Medical

6

Defendants, Kollman, McConnell, and Gomes, "failed to provide adequate medical care to him following [his] repeated and involuntary exposure to unreasonably high levels of ETS." (Doc. 27, ¶ 128). He specifically alleges that they "refused to order reasonable medical housing accommodations, separations, or a transfer to a non-smoking facility to eliminate or mitigate the known harmful effects of ETS exposure, ignored plaintiff's requests for treatment of ETS-related symptoms, and justified his failure to provide treatment by stating that 'this is a non-smoking facility'." (Id. at ¶¶ 129, 133, 135). In Count 3, he alleges that Defendants Tice, Eckard, and L. Oliver, retaliated against him for filing a Section 1983 action and for filing grievances. (Id. at 136-43).

### III. Discussion

#### A. Statute of Limitations

Initially, Defendants seek to dismiss the allegations of the complaint directed at Defendants Cook, Kyle, Eckard, Kollman, McConnell, and Gomes found at paragraphs 91-120, which concern conduct that occurred in 2013, as barred by the statute of limitations. (Doc. 53, pp. 10, 11; Doc. 59, pp. 24, 25). A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). A claim brought pursuant to 42 U.S.C. § 1983 is subject to the same statute of limitations that applies to personal injury tort claims in the state in which such a claim arises. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Kach v. Hose, 589 F.3d

626, 639 (3d Cir. 2009). Oliver's claim arose in Pennsylvania; thus, the applicable statute of limitations is Pennsylvania's two year statute of limitations for personal injury actions. 42 PA. CONS. STAT. ANN. § 5524(2). The statute of limitations period accrues when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action. See Garvin v. City of Phila., 354 F.3d 215 (3d Cir. 2003); Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir.1991). Oliver unequivocally knew or had reason to know of the alleged injury that is the basis of this section 1983 action in February 2013, when he first sought enforcement of the no smoking policy. He did not commence this action until March 8, 2016, almost three years later. The allegations against Cook, Kyle, Eckard, Kollman, McConnell, and Gomes, concerning conduct that occurred in 2013, and contained in paragraphs 91-120 of the Amended Complaint, are barred by the statute of limitations and will be dismissed.

    B.    Official Capacity

Defendants seek dismissal of all claims to the extent that Oliver is attempting to impose liability against them in their official capacities. Personal-capacity suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law. Official-capacity suits, in contrast, generally represent an action against an entity of which the government official is an agent. Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988); see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978). When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state. Hafer v. Melo, 502

U.S. 21, 25 (1991). However, the doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100–01, 117 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 54(1996); Lavia v. Pennsylvania, 224 F.3d 190, 195–96 (3d Cir. 2000). That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is to be imposed. Scheuer v. Rhodes, 416 U.S. 232, 237–38 (1974). Congress has not abrogated the immunity regarding Plaintiff's claims; nor has Pennsylvania waived this grant of immunity. See 42 Pa.C.S.A. § 8521(b). Consequently, any and all counts contained in the complaint seeking money damages against the Defendants in their official capacity are barred by sovereign immunity. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010).

    C.    Personal Involvement

Section 1983 offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Accordingly, to establish a claim for relief under Bivens, a plaintiff must demonstrate: (1) that the conduct was committed by a federal actor, and (2) that conduct resulted in the deprivation of a right secured by the Constitution or federal laws of the United States. See Brown, 250 F.3d at 801.

Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of *respondeat superior*." Id. In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003); Rode, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. Atkinson, 316 F.3d at 271; Rode, 845 F.2d at 1207-08.

Defendants Eckard, Himes, Tice and Wetzel move to dismiss the Amended Complaint based on a lack of personal involvement in the underlying alleged unconstitutional conduct. They argue that "all allegations [against Eckard, Himes and Tice] relate to their actions in reviewing grievances and/or misconducts." (Doc. 53, p. 12). Likewise, Defendant Wetzel seeks dismissal arguing that "the only allegations

against [him] are conclusory statement[s] that he knew of the hazards of ETS and exercised deliberate indifference to Plaintiff's health by failing to protect him from effects of ETS." (Doc. 53, p. 12, citing Doc. 27, ¶¶ 140-42). Oliver alleges that "Wetzel was aware of the well known dangers of ETS exposure and the harm suffered by plaintiff through plaintiff's numerous written correspondence and exhausted grievances to the Governor's Office of General Counsel and the Chief, Secretary's Office of Inmate Grievances and Appeals – all of which were denied." (Doc. 27, ¶ 141).

Allegations that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or an official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. See Rode, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006); see also Croom v. Wagner, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corrections, No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Hence, Oliver's claims against Eckard, Himes, Tice, and Wetzel which solely arise out of the alleged failure to protect him from ETS

exposure based on information contained in grievances and misconduct proceedings and appeals, and the failure to satisfactorily resolve his complaints, will be dismissed.

Moreover, Oliver's allegations in Count Three, that Defendant Wetzel "directed prison officials at SCI-Huntingdon to engage in a campaign of harassment and retaliation against [him] to dissuade him from filing further grievances or litigate and ETS claim," are insufficient to establish personal involvement in any alleged retaliation. They are wholly conclusory without any supporting factual averments. Further they rely on the doctrine of *respondeat superior* in hypothesizing that Wetzel, based on his role as the Secretary of the DOC, had knowledge of, or personal involvement in, the deprivation of his rights. (Doc. 27, ¶¶ 6, 142).

D. Count One

The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" Helling v. McKinney, 509 U.S. 25, 33 (1993) (quoting DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200 (1989)). In Count One, Oliver alleges that at various times in 2015, and in early 2016, the Commonwealth Defendants continuously involuntarily exposed him to ETS in violation of the Eighth Amendment. "There are two varieties of ETS claims—present injury claims and future injury claims—and they are measured by different standards." Brown v. DiGuglielmo, 418 F.App'x. 99, 102 (3d Cir.2011) (citing Atkinson v. Taylor, 316 F.3d 257, 273 (3d Cir. 2003) (Ambro, J., dissenting in part)). Oliver sets forth a present injury claim based on exposure to ETS which requires proof of: 1) a sufficiently

12

serious medical need related to ETS exposure; and 2) deliberate indifference by the prison authorities to that need. Id. at 266 (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

Construing the allegations contained in Count One in conjunction with the allegations contained in paragraphs 35- 90, in a light most favorable to Oliver, compels the Court to deny The Commonwealth Defendants' motion to dismiss with regard to Count One. The Eighth Amendment claim will proceed against remaining Commonwealth Defendants L. Oliver, Smart, Treweek, Yohn and Stevens.

E.  Count Two

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." Rouse, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and

courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. Estelle v. Gamble, 429 U.S. 97, 105–06 (1976).

Oliver's allegations that the Defendants Kollman, McConnell, and Gomes failed to provide him adequate medical care when they "refused to order reasonable medical housing accommodations, separations, or a transfer to a non-smoking facility to eliminate or mitigate the known harmful effects of ETS exposure, ignored plaintiff's requests for treatment of ETS-related symptoms, and justified his failure to provide treatment by stating that 'this is a non-smoking facility'," are sufficient to state an eighth amendment claim for denial of adequate medical care. Count Two will proceed against the Medical Defendants.

F. Count Three

Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional. See, e.g., Mitchell v. Horn, 318 F.3d 523, 529–31 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330, 333–34 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 224–26 (3d Cir. 2000). To establish a prima facie retaliation claim under 42 U.S.C. § 1983, a plaintiff "must prove that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally

protected conduct was a substantial or motivating factor in the decision to discipline him." Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). With respect to the third element, "once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. This is a "deferential standard" meant to take into account "that the task of prison administration is difficult, and that courts should afford deference to decisions made by prison officials, who possess the necessary expertise." Id.

Oliver alleges that when he reported suffering adverse effects from exposure to ETS, prison officials retaliated against him to dissuade him from filing grievances or pursuing litigation. (Doc, 27, ¶¶ 71, 72, 138). He specifically alleges that L. Oliver "concealed evidence of prisoner's smoking and had [him] conveyed to the RHU in order to confiscate his legal materials to prevent further litigation." (Doc. 27, ¶ 139).

Oliver's ability to file grievances against prison officials is a protected activity for purposes of a retaliation claim. *See Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir.1981) (finding retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). The second prong requires a plaintiff to demonstrate that he suffered "adverse" action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *See Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). Oliver also meets this prong as he indicates

15

that he was issued a fabricated misconduct and was placed in the RHU because he complained about being housed with a cellmate who smoked. This constitutes "adverse" action. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2002) (holding that prisoner's allegation that he was falsely charged with misconduct in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); *Allah*, 229 F.3d at 225 (holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim). The third prong requires that there be a causal link between the exercise of the constitutional right and the adverse action taken against the prisoner. *Rauser*, 241 F.3d at 333–34. This may be established by evidence of "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory adverse action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Ci r.2003) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link) (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Ci r. 1997)). Allegations that Oliver's complaints about being housed with a cellmate who smokes were immediately met with the issuance of a misconduct report for failing to obey an order in refusing to accept a cellmate and transfer to the RHU, are sufficient to meet the third prong. As such, the retaliation claim against Defendant L. Oliver will proceed.

G. <u>Conspiracy</u>

To the extent that Oliver attempts to pursue a conspiracy claim, in any manner, and in connection with any of the Three Counts of his complaint, such a claim will be dismissed. In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. <u>D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.</u>, 972 F.2d 1364, 1377 (3d Cir. 1992); <u>Rose v. Bartle</u>, 871 F.2d 331, 366 (3d Cir.1989); <u>Durre v. Dempsey</u>, 869 F.2d 543, 545 (10th Cir.1989). The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights, (2) the time and the place of the conduct, and (3) the identity of the officials responsible for the conduct. <u>Oatess v. Sobolevitch</u>, 914 F.2d 428, 432 n. 8 (3d Cir.1990). <u>See</u> also, <u>Colburn v. Upper Darby Twp.</u>, 838 F.2d 663 (3d Cir.1988).

The essence of a conspiracy is an agreement or concerted action between individuals. <u>See D.R. by L.R.</u>, 972 F.2d at 1377; <u>Durre</u>, 869 F.2d at 545. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. <u>See id.</u>; <u>Rose</u>, 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. <u>Deck v. Leftridge</u>, 771 F.2d 1168, 1170 (8th Cir.1985). A plaintiff cannot rely

17

on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir.1991).

Viewing the Amended Complaint in the light most favorable to Oliver, it is clear that he has failed to state a viable conspiracy claim against any of the Defendants. There are no averments of fact in the complaint that reasonably suggest the presence of an agreement or concerted activity between Defendants to violate Oliver's civil rights. His vague and conclusory allegations of a conspiracy fail to satisfy the pleading requirements of Twombly and Iqbal.

## IV. Conclusion

Based on the foregoing, Defendants' motions (Docs. 50, 51) to dismiss will granted in part and denied in part.

An appropriate Order will enter.

                                    **BY THE COURT:**

                                    s/James M. Munley
                                    **JUDGE JAMES M. MUNLEY**
                                    **United States District Court**

**Dated:** September 29, 2017